UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA MASTERPOLE,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Case No. 21-cv-06952-SI<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 24 |

Before the Court is the motion for summary judgment filed by Defendant Costco Wholesale Corporation ("Costco"). Argument was held on August 25, 2023. The Court has considered the parties' argument, papers, relevant legal authority, and the record in this case, and it hereby **DENIES** Costco's motion.[1]

**BACKGROUND**

Plaintiff Linda Masterpole asserts claims against Costco for negligence and premises liability after she fell inside a Costco Warehouse (the "Warehouse") on February 16, 2019 (the "Accident"). Dkt. No. 25, Declaration of Justin Blaylock ("Blaylock Decl."), ¶ 3; Dkt. No. 25-1, Blaylock Decl. Ex. B (Compl. at ECF pp. 10–12); Dkt. No. 35-1, Declaration of Kimberly Levy ("Levy Decl."), ¶ 3, Ex. 2 (Deposition of Linda Masterpole ("Masterpole Depo.") at 39:13-18, 23-25, 40:4-10.

It is Costco's policy to conduct floor walks and safety inspections every hour, which are

---

[1] The Court did not rely on the declaration of Alex J. Balian, which Plaintiff filed in support of her opposition. Accordingly, the Court overrules Costco's objection to the declaration as moot.

reported on a "Daily Floor-walk/Safety Inspection" form ("Inspection Report"). Dkt. No. 27, Declaration of Wilfred Bareng ("Bareng Decl."), ¶¶ 7-8, Ex. F (Inspection Report). The Inspection Report directs employees to "[i]nspect every aisle for unsafe conditions and potential hazards by physically walking down congested aisles, or visually inspecting unobstructed aisles. Report critical issues immediately." *Id.* at 1. When it rains, Costco will lay down a "PIG" mat and will conduct extra floor sweeps. Levy Decl., ¶ 4, Ex. 3 (Deposition of Wilfred Bareng ("Bareng Depo.") at 110:12-18, 111:2-20, 123:19-124:2). It is undisputed that it was raining throughout the day on February 16, 2019. It also is undisputed that the Warehouse floor is concrete.

Costco has a surveillance camera above the entrance to the Warehouse and submitted footage from that camera, which covers the period between 12:06 p.m. and 1:20 p.m. on the day of the Accident (the "Video"). Blaylock Decl., ¶ 2, Ex. A (Video).[2] At approximately 12:48 p.m., a Costco employee sweeps the area where the Accident occurred and sweeps up a piece of debris. The floor to the right of the debris appears shiny but the employee does not sweep that area.[3] Video at 12:47:25-12:48:27; Bareng Depo. Ex. 9 (Video clip); *see also* Dkt. No. 26, Declaration of Keaton Harris ("Harris Decl."), ¶ 7 (still image from Video); Bareng Decl., ¶ 9 (still image from Video).

According to the Inspection Report, Martin Sue conducted a floor inspection between 1:00 and 1:23 p.m. Inspection Report at 1; Bareng Depo. at 141:11-142:12. The Video includes footage of what appears to be a portion of Sue's floor-walk and safety inspection. During that clip, Sue walks through the area the Accident occurred and does not appear to look down at the floor. Sue did not report any hazards in the area of the Accident on the Inspection Report. Video at 13:12:37-13:16:22; Bareng Depo. at 140:8-142:12; Bareng Depo. Ex. 9 (Video clip); Inspection Report at 1.

Masterpole enters the Warehouse at approximately 1:07 p.m. and walks by the area where the Accident happened, without incident. Video at 13:07:00-13:07:55. Shortly after 1:16 p.m., Masterpole appears heading back toward the entrance and slips. Video at 13:16:43-13:16:57; *see also* Bareng Depo., Ex. 10 (Video clip). Masterpole testified that she slipped in a puddle of water

---

[2] Neither party presents evidence from any of the employees depicted in the Video.

[3] When the Court refers to "left" or "right" in connection with the Video, it is based on one's perspective as they are watching the footage.

on the Warehouse floor. Blaylock Decl., ¶¶ 5-6; Dkt. No. 25-3, Blaylock Decl., Ex. D (Masterpole Depo. at 42, 49, 58-60)[4]; Harris Decl., ¶¶ 1-5; Dkt. No. 26-1, Harris Decl., Ex. E (Incident Report). Masterpole also testified she did not see the water before she slipped. Levy Decl., Ex. 2 (Masterpole Depo. at 51:24). Masterpole did not know the source of the water, but she testified that "it seemed obvious" it was rainwater, which she "imagine[d] … had taken some time to collect." *Id.* at 53:8-25.

Masterpole also estimated the water was an inch deep and was about the size of a large pizza, but she did not know exactly how long the water had been there. *Id.* at 54:2-6, 54:16-22; *see also* Blaylock Decl., Ex. D (Masterpole Depo. at 52-56). Masterpole does not know if any Costco employees were aware of the water. However, she saw two to three Costco employees in the area where the Accident occurred. Levy Decl., Ex. 2 (Masterpole Depo. at 56:13-17); Blaylock Decl., Ex. D (Masterpole Depo. at 57).

Although the Video does not clearly show standing water where Masterpole fell, it does appear that water was tracked onto the floor from shoes, shopping carts, or umbrellas as customers entered the Warehouse. After Masterpole gets up, there is a dark streak on the floor that tracks the direction Masterpole's leg extended as she fell. Video at 13:16:55-13:17:21; *see also* Bareng Depo. at 142:15-16; Bareng Depo. Ex. 10 (Video clip). In addition, shortly before 1:16 p.m., a customer shakes a shopping cart near where the Accident occurred. Video at 12:39-12:41, 12:58-12:59, 13:15:52-13:15:57; Bareng Depo. at 12:17-25, 126:20-127:7, 127:22-128:129:11, 134:24-135:20, 144:20-145:17, 154:10-156:3; Bareng Depo. Exs. 4, 7.

After Masterpole falls, a Costco employee comes over to assist her and they move to the entrance of the Warehouse. While they are talking, another Costco employee places a yellow "wet floor" in the area where the Accident occurred. Video at 13:07:03-13:07:37; Bareng Depo., Ex. 10 (Video clip); Bareng Depo. at 150:4-6.

The Court will address additional facts as necessary in the analysis.

---

[4] The transcript Costco submitted does not contain page or line numbers.

3

**LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not weigh evidence or make determinations of credibility. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248–49. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, it must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards*, 55 F.3d at 251); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the

4

1 complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (internal quotes omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**DISCUSSION**

To prevail at trial, Masterpole must show that Costco owed her a duty of care to keep its premises reasonably safe, that it breached that duty, that the breach was the proximate cause of her injury, and that she suffered damages. *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001).

> Commercial property owners are not insurers of the safety of their patrons, although they owe the patrons duties to exercise reasonable care in keeping the premises reasonably safe. To exercise a degree of care that is commensurate with the risks involved, the owner must make reasonable inspections of the portions of the premises open to customers. An owner is liable for harm caused by a dangerous condition, of which the owner had actual or constructive knowledge. An injured plaintiff has the burden of showing that the owner had notice of the defect in sufficient time to correct it, but failed to take reasonable steps to do so. One way to carry that burden is to raise an inference that the hazardous condition existed long enough for the owner to have discovered it, if an owner exercising reasonable care would have learned of it.

*Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 431 (2012) (internal quotes omitted). The "basic principle to be followed in all these situations is that the owner must use the care required of a reasonably prudent person acting under the same circumstances." *Ortega*, 26 Cal. 4th at 1205.

Costco does not contest that water on the floor would be a hazard. *See, e.g.*, Bareng Depo. at 111:21-23. It argues that, as a matter of law, Masterpole cannot establish actual or constructive notice because there is evidence it inspected the area at least 30 minutes before Masterpole fell. Costco relies on a number of cases in which the courts granted summary judgment in favor of defendants when an employee inspected an area within 30 or fewer minutes of an accident. *See, e.g., Cardoza v. Target Corp.*, CV 17-2232-MWF (RAOx), 2018 WL 3357489, at *3 (collecting cases) (C.D. Cal. June 22, 2018), *aff'd* 765 Fed. Appx. 360 (9th Cir. 2019). In *Cardoza*, the court concluded that the plaintiff could not establish constructive notice as a matter of law because one of the defendant's employees conducted an active inspection of the area 10 minutes before the plaintiff's fall. *Id.*

5

1 However, there is no set number for a reasonable amount of time between inspections. *Ortega*, 26 Cal. 4th at 1207. In *Ortega*, the California Supreme Court considered claims by a plaintiff who had slipped in a puddle of milk on the floor of a Kmart. As in this case, the plaintiff did not know how the milk got on the floor or how long it had been there. 26 Cal. 4th at 1204. The California Supreme Court held that an "owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that" a hazardous condition existed "long enough to give the owner the opportunity to discovery and remedy it." *Id.* It concluded that "[w]hether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and the cases do not impose exact time limitations. Each accident must be viewed in light of its own unique circumstances." *Id.* at 1207.

In *Ortega*, a former store manager testified that, based on staffing, it would be difficult for "something to be on the floor for more than 15 or 30 minutes." *Id.* However, the manager also testified that "the milk could have been on the floor for longer than two hours" and that Kmart management "would not have had any idea if the aisle where the accident occurred was inspected at any time during that day." *Id.* The California Supreme Court concluded that evidence from the store manager was sufficient to give rise to an inference that the defendant had constructive notice of the hazard and failed to correct it. *Id.* at 1210-13.

In *Zadoian v. Target Corporation*, the court denied summary judgment on the basis that although employees did inspections 5 and 14 minutes before the plaintiff's accident, neither of the employees testified they "actively" inspected the area. No. CV 19-326 DSF (AGR), 2020 WL 1652351, at *3–4 (C.D. Cal. Aug. 4, 2020). The court observed that it was not obvious from surveillance video that they looked at the floor during the inspection. *Id.*

The Court concludes Masterpole has met her burden to show there are disputed issues of fact as to whether Costco had constructive notice of the water in time to take action. Although an employee did sweep the area about 30 minutes before the fall, looking the Video in the light most favorable to Masterpole, a reasonable jury could conclude that customers continued to track water from the PIG mat to the concrete floor. It is undisputed that it was raining on the day of the accident, which a jury may consider as a condition warranting more frequent inspections. *See, e.g., Scott v.*

6

*Alpha Beta Co.*, 104 Cal. App. 3d 305, 308 (1980) ("In terms of notice to the store owner of the existence of a dangerous condition, the occasional spilling of a product on the floor is factually distinguishable from rainwater being deposited on the floor as customers enter on a rainy day."). And Bareng testified that on weekends the Warehouse is busy and that 300-400 carts an hour in the store. (Bareng Depo. at 112:9-15, 122:13-19.) In *Scott,* the plaintiff presented evidence that the store "normally had 2,000 customers a day." *Id.* at 308. The court concluded that, under those circumstances, the "defendant had sufficient notice, and it was an issue for the jury to determine whether the steps defendant took to remedy or warn about the danger were sufficient." *Id.*

Further, although there is evidence that Sue conducted a floor-walk and safety inspection shortly before the Accident, the Video shows Sue walk by the area Masterpole fell. It is not obvious from the Video that Sue looked down at the ground. Costco argues "an observation can be made merely by moving one's pupils without the need of moving one's head." Reply at 7:28-8:1. But whether Sue did so is a factual question, and the Court has no testimony from Sue about what he did or how he conducted his inspection. As in *Zadoian*, a reasonable jury could conclude that Sue did not conduct an "active" investigation of the relevant area. *See also Singh v. Costco Wholesale Corp.*, No. 20-cv-08180-NC, 2023 WL 3687971, at *3–4 (N.D. Cal. May 26, 2023) (finding plaintiff raised genuine issues of material fact about reasonableness of inspections occurring less than 30 minutes before a fall).

Based on the record before the Court, Masterpole has presented sufficient evidence to overcome Costco's motion and that this is not a case where the "probabilities are at best evenly balanced," which would necessitate a judgment in Costo's favor. *Ortega,* 26 Cal. 4th at 1205.

///

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Costco's motion for summary judgment.

At the hearing on this matter, the Court and the parties discussed the trial calendar previously set in this case. The pre-trial conference is now scheduled for April 23, 2023. The trial, including jury selection is now scheduled to begin on May 6, 2023. All other dates set by Judge White's June 26, 2023 order remain in effect.

**IT IS SO ORDERED**.

Dated: August 25, 2023

SUSAN ILLSTON
United States District Judge